## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| JENNIFER CRAGER, Individually and For Others Similarly Situated<br><br>v.<br><br>CONTRACT LAND STAFF, LLC | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Jennifer Crager (Crager) brings this collective action under 216(b) of the FLSA to recover unpaid overtime wages and other damages from Defendant Contract Land Staff, LLC (CLS) individually and on behalf of all others similarly situated under the under the Fair Labor Standards Act (FLSA).

2. Crager worked for CLS under a variety of job titles, including Lead Land Representative and Senior Right of Way Agent.

3. Crager and the Putative Class Members (as defined below) regularly worked more than 40 hours a week.

4. But Crager and the Putative Class Members never received overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of receiving overtime as required by the FLSA, these workers received a flat amount for each day worked (a "day rate") without overtime compensation.

6. As a Lead Land Representative, Crager and the Putative Class Members performed non-exempt job duties.

7. Crager and the Putative Class Members never received a guaranteed salary while receiving a day rate.

8. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Crager performed work for CLS in St. Petersburg, Florida, in this District and Division.

## THE PARTIES

11. Crager was employed by CLS from 2019 until August 2021.

12. Crager was an Opt-in Plaintiff in *Weinmann v. Contract Land Staff, LLC*, No. 2-22-cv-01140, Doc. 38 (W.D. Pa).

13. Her claims are tolled against CLS from her filing of consent in that matter on August 22, 2022.

14. The *Weinmann* Court granted conditional certification for the same class, but for CLS's right of way agents only in Pennsylvania.

15. Crager brings this claim on behalf of CLS's right of way agents in Florida. Her consent is attached as Exhibit 1.

16. Throughout her employment with CLS, Crager was paid a day rate with no overtime compensation.

17. Crager brings this action individually and on behalf of all other similarly situated Right of Way Agents who worked in Florida and were paid through CLS's day rate system in violation of the FLSA. (collectively referred to as the Putative Class Members).

18. Each of these workers received a flat amount for each day worked and did not receive overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA.

19. The collective of similarly situated workers—or Putative Class Members sought to be certified is defined as follows:

> **All Right of Way Agents who worked for CLS, in Florida, who were paid a day rate with no overtime in the past three years. (Putative Class Members).**

20. The Putative Class Members are easily ascertainable from CLS's business and personnel records.

21. Contract Land Staff, LLC is a Delaware corporation and may be served with process by serving its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

## COVERAGE UNDER THE FLSA

22. At all times hereinafter mentioned, CLS has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all times hereinafter mentioned, CLS has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. At all times hereinafter mentioned, CLS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25. At all times hereinafter mentioned, CLS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

26. At all times hereinafter mentioned, Crager and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

27. CLS is an independent right of way and land management consulting company that provides Right of Way project management, title, permitting & acquisition, employee training, staffing, and regulatory consultation regarding FERC.

28. CLS operates throughout the United States, including Florida. To complete its business objectives, CLS hires workers, such as Crager, to perform right of way services.

29. These Florida right of way workers make up the proposed collective of the Putative Class Members. While exact job titles and job duties may differ,[1] these employees are subjected to the same or similar illegal pay practices for similar work.

30. Crager is one of these employees who performed right of way services.

31. Crager worked for CLS in Florida from 2019 until August 2021.

32. Throughout her employment with CLS in Florida (and everywhere else), CLS paid Crager on a day rate basis.

33. Crager and the Putative Class Members work for CLS under its day rate pay scheme.

34. Crager and the Putative Class Members do not receive a salary.

35. Regardless, Crager and the Putative Class Members were non-exempt and should have received overtime compensation.

36. If Crager and the Putative Class Members did not work, they did not get paid.

37. Crager and the Putative Class Members receive a day rate.

38. Crager and the Putative Class Members do not receive overtime pay.

39. This is despite the fact Crager and the Class Members often worked ten or more hours a day, for 5 or 6 days a week, for weeks at a time.

40. For example, Crager received a day rate for each day he worked for CLS.

---

[1] Other related job titles include: Landman, Acquisition Agent, Title Abstracter, and Land Agent/Representative.

41. Although she typically worked five to six days a week, for ten or more hours a day, Crager did not receive any overtime pay.

42. For example, in the bimonthly pay period ending on August 15, 2019, Crager worked 13 days and received her day rate of $300 for each day worked.

43. So during that period, Crager worked 13 out of 15 days with no overtime pay.

44. Crager and the Putative Class Members received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

45. Crager and the Putative Class Members do not, and never have, received guaranteed weekly compensation from CLS irrespective of the days worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

46. Crager and the Putative Class Members work in accordance with the schedule set by CLS and/or its clients.

47. Crager's work schedule is typical of the Putative Class Members.

48. CLS controls Crager and the Putative Class Members' pay.

49. Likewise, CLS and/or its clients' control Crager and the Putative Class Members' work.

50. CLS requires Crager and the Putative Class Members to follow CLS and/or its clients' policies and procedures.

51. Crager and the Putative Class Members' work must adhere to the quality standards put in place by CLS and/or its clients.

52. Crager and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other right of way agents in their respective positions) to perform their job duties.

53. As a Right of Way Agent, Crager was responsible for reviewing public records to

determine property ownership, adhering to safety standards and procedures, documenting communication with landowners, and reviewing easements.

54. All of CLS's Putative Class Members perform similar duties, including reviewing easement agreements and proof of title, ensuring work is done according to established safety guidelines, specifications, and restrictions.

55. Crager and the Putative Class Members provide documents related to land acquisition and easement agreements to CLS (and/or its clients) personnel.

56. At all relevant times, CLS and/or their clients maintained control over Crager and the Class Members via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

57. Crager and the Putative Class Members do not have the power to hire or fire any employees.

58. Crager's working relationship with CLS is similar CLS's relationship with the other Putative Class Members.

59. Crager's and the Putative Class Members' job duties were non-exempt.

60. Yet, CLS did not pay Crager and the Putative Class Members overtime.

61. Instead it paid a day rate to Crager and the Putative Class Members.

62. A day rate does not constitute a salary guarantee under the FLSA.

63. Accordingly, Crager and the Putative Class Members were owed time and a half overtime for hours worked over 40 in a workweek.

64. Even if CLS paid Crager and the Putative Class Members received a weekly "salary," this "salary" was not reasonably related to what they actually earned.

65. Therefore, CLS fails the reasonable relationship aspect of the salary basis test.

66. CLS knew Crager and the Putative Class Members worked more than 40 hours in a week.

67. CLS has been sued for the same pay practice before on more than one occasion.

68. CLS has not conducted time studies to determine if the Right of Way Agents were non-exempt.

69. CLS has not investigated as to whether a day rate properly compensates the Right of Way Agents with overtime compensation or a salary guarantee.

70. CLS's failure to pay overtime to Crager and the Putative Class Members was, and is, a willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

71. Crager brings their claim under the FLSA as a collective action. The Putative Class Members are similarly situated to Crager in all relevant respects.

72. The Putative Class Members were victimized by CLS's uniform day rate pay policy, which is in violation of the FLSA.

73. Putative Class Members worked with Crager in Florida and indicated they were paid in the same manner (day rate without overtime).

74. Putative Class Members worked with Crager, and they performed similar right of way services for CLS in Florida.

75. Indeed, Putative Class Members worked with Crager, and, regardless of their precise job title, their job duties were to perform right of way services in accordance with CLS's policies, procedures, plans, and regulations.

76. Based on her experiences with CLS, Crager is aware that CLS's illegal day rate pay plan was imposed on the Putative Class Members.

77. The Putative Class Members are similarly situated in all relevant respects.

78. Even if their precise job duties varied somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

79. All the Putative Class Members were paid a day rate without overtime.

80. All of the Putative Class Members worked for CLS in Florida.

81. The illegal day rate pay plan that CLS imposed on Crager was likewise imposed on all Putative Class Members.

82. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

83. The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

84. The overtime owed to Crager and the Class Members will be calculated using the same records.

85. The overtime owed to Crager and the Class Members will be calculated using the same formula.

86. Crager's experiences are therefore typical of the experiences of the Class Members.

87. The specific job titles or precise job locations of the various members of the class do not prevent a collective action.

88. Crager has no interest contrary to, or in conflict with, the Putative Class Members that would prevent a collective action.

89. Like each Class Member, Crager has an interest in obtaining the unpaid overtime wages owed under the FLSA.

90. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91. Absent a collective action, many Putative Class Members will not obtain redress of their injuries.

92. Absent a collective action, CLS will reap the unjust benefits of violating the FLSA.

93. Further, even if some of the Putative Class Members could afford individual litigation against CLS, it would be unduly burdensome to the judicial system.

94. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

95. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

96. Crager and the Putative Class Members sustained damages arising out of CLS's illegal and uniform compensation policy.

97. Crager knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

98. Consistent with CLS's illegal day rate pay plan, Crager and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

99. As part of their regular business practices, CLS intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Crager and the Putative Class Members.

100. CLS was aware that the FLSA required them to pay Crager and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

101. There are at least 60 similarly situated Putative Class Members who have been denied overtime pay during the relevant time period in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

102. Those similarly situated employees are known to CLS, are readily identifiable, and can be located through CLS's records.

## VIOLATIONS OF THE FLSA

103. Crager brings this claim under the FLSA as a collective action.

104. By failing to pay Crager and those similarly situated to her overtime at one-and-one-half times their regular rates, CLS violated the FLSA's overtime provisions.

105. As set forth herein, CLS has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

106. CLS has been sued for this same pay practice multiple times.

107. CLS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Crager and the Putative Class Members overtime compensation. CLS's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

108. Accordingly, Crager and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorneys' fees and costs.

109. Crager and the Putative Class Members are entitled to recover their unpaid overtime compensation, liquidated damages, reasonable attorney's fees, costs, and expenses of this action from CLS.

## JURY DEMAND

110. Crager demands a trial by jury.

## RELIEF SOUGHT

111. WHEREFORE, Crager prays for judgment against CLS as follows:

    a. For An Order designating the Putative Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. For an Order pursuant to Section 16(b) of the FLSA finding CLS liable for unpaid back wages due to Crager and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

    c. For an Order awarding attorneys' fees and costs;

    d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:    /s/ *C. Ryan Morgan*
       **C. Ryan Morgan, Esq.**
       FBN 0015527
       Morgan & Morgan, P.A.
       20 N. Orange Ave., 16th Floor
       P.O. Box 4979
       Orlando, FL 32801
       Telephone:   (407) 420-1414
       Facsimile:    (407) 867-4791
       Email:  rmorgan@forthepeople.com

       **ATTORNEYS IN CHARGE FOR PLAINTIFFS**